# Wheeling.

## THE EXCHANGE BANK OF VIRGINIA, *vs.* COOKMAN, *et. al.*

### (Absent, HARRISON, J.*)

#### January Term, 1865.

1. Where a special contract to pay money, is at variance with a general custom and the previous mode of dealing between the parties, the special contract must prevail.

2. A general custom and usage, which is acquiesced in by a party, allowing him to pay his indebtedness to a bank by depositing to the credit thereof, money for the purpose in *any one of several banks*, but the indebtedness is not to be discharged until notice of the deposit is given to the bank where the indebtedness exists, is defeated by a special contract to pay in a *particular* bank so far as *notice* being required of the deposit in the particular bank; it being by the special contract made the *agent* of the creditor to receive the amount of the indebtedness.

3. And it is immaterial whether or not the deposit was made at or before the maturity of the note upon which the indebtedness is based.

On the 18th day of June, 1856, *Parker B. Cookman* made his certain note in writing promising to pay in one hundred and twenty days after date, to the order of *Samuel E. Cookman* two thousand dollars, negotiable and payable at the office of discount and deposit of the *Exchange Bank of Virginia* at *Weston.* The note was endorsed by *Samuel E. Cookman, William M. Cookman* and *Jesse M. Post,* and was discounted in the usual manner by the *Bank* at *Weston.*

On the 17th day of October, 1856, the said *Parker B. Cookman* paid, to the credit of the *Exchange Bank* at *Weston,* three thousand dollars, into the *Lancaster* bank in the city of *Lancaster* in the state of *Pennsylvania*; no notice of this payment was given to the *Exchange Bank* at *Weston* until December 4, 1856.

---

*He was engaged in the case in the court below; and Judge Polsley, of the VII circuit, was called to the bench under the 10 sec. of Art. VI of the constitution.

The *Lancaster* bank failed and became insolvent on the 17th day of November, 1856. The notice of the deposit of the three thousand dollars, on the 17th day of October, was, by letter from the cashier of the *Lancaster* bank to *R. J. McCandlish*, cashier of the bank at *Weston*, delivered to him on the 4th day of December, 1856, by the said *Parker B. Cookman*, who then claimed the payment into the *Lancaster* bank on the 17th day of October, to the credit of the bank at *Weston*, as a discharge of the note for two thousand dollars, and he refused to pay anything further in satisfaction of the same. Suit was therefore brought against said *Parker B. Cookman* and his endorsers.

On the trial of the cause in the circuit court of *Lewis* county, the defendants pleaded payment, notice of set off and *nil debet*. The plaintiff gave the note in evidence; thereupon the defendants gave evidence tending to prove that in the latter part of September, 1856, and prior to the time when the said note became due, that the plaintiff agreed with the said *Parker B. Cookman*, that he might make payment of the amount of the said note by a deposit of the amount thereof in the *Lancaster* bank in the city of *Lancaster*, state of *Pennsylvania*, to the credit of the *Exchange Bank of Virginia* at *Weston*, and then defendant *Parker B. Cookman* proved that on the 17th day of October, 1856, he deposited in the said *Lancaster* bank, to the credit of the plaintiff, the sum of three thousand dollars. The plaintiff then gave evidence tending to prove that it was the custom and usage existing among the banks in that part of the state and the banks in the state of Pennsylvania, that where a deposit was made in one of those banks to the credit of the other, that the bank receiving such deposit for the credit of another bank, gave immediate notice thereof by mail in the form of a letter of advice, or furnished the depositor thereof a certificate of such deposit if he so desired. That the *Exchange Bank* of *Virginia* at *Weston* did not receive notice of said deposit of the 17th of October, 1856, until the 4th day of December, 1856, when a letter from the cashier of the *Lancaster* bank was brought to the cashier of the *Exchange*

*Bank* at *Weston*, by defendant, *P. B. Cookman*, which letter bore date on the 29th day of November, 1856; that it required about three days to transmit a letter from *Lancaster* city to *Weston*, *Virginia*, by the usual course of mails in the year 1856. The plaintiff also gave evidence that the *Lancaster* bank failed and became insolvent and unable to pay its debts on the 17th of November, 1856, and had so continued to the time of the trial, and that no part of the sum so deposited had been paid by the said bank or any person; that the said *Parker B. Cookman* had, since the year 1852, at divers times, borrowed from the plaintiff and became indebted therefor by his negotiable notes, various sums of money, and that he had made payment of the same by deposits in the Baltimore banks, and sundry banks in the State of *Pennsylvania*, according to a statement filed with the evidence, and that the *Exchange Bank of Virginia*, at *Weston*, gave credit to said *Cookman* for said deposits when notice thereof was received by it. The plaintiff further gave evidence tending to prove that in all its dealings and transactions with defendant *Parker B. Cookman*, credit never was given him on his indebtedness until notice was received from the office of the bank where he had made a deposit to the credit of the *Exchange Bank of Virginia,* at *Weston*, or upon delivery to said *Exchange Bank* of a certificate of such deposit, and that said *Cookman* acquiesced in that mode of having credit given him on his indebtedness in said *Exchange Bank*. That on the 26th day of November, 1856, defendant *Parker B. Cookman* called at the banking house of the plaintiff in *Weston* and enquired of the cashier if he had received any notice of the deposit in the *Lancaster* bank on the 17th of October, and received an answer that no such notice had been given; and that all deposits made in the *Lancaster* bank prior to the one made on the 17th of October, 1856, by said *Cookman*, to the credit of the *Exchange Bank of Virginia*, at *Weston*, were promptly announced by mail to said *Exchange Bank*. And that it was the habit of said *Cookman*, anticipating the maturity of his notes, to leave in said *Exchange Bank* at *Weston*, waivers of protest, demand

and notice of non-payment, to operate until said *Exchange Bank* would receive notice from the bank receiving deposits made therein by said *Cookman,* to the credit of said *Exchange Bank.*

After the evidence tending to prove the facts before stated, the plaintiff moved to instruct the jury, in four separate motions which, though varying in form, were substantially the same in effect. The instruction asked for by the plaintiff and which was refused, as were all the others, and which constituted the plaintiff's 4th bill of exceptions, contains essentially, all the points raised in the case, and will be found in the opinion of the judge who delivered the opinion of the court. The jury found a verdict for the defendants, and judgment was entered thereon.

The plaintiff applied to this court for a writ of error and supersedeas, which was granted.

*Lamb* and *Paull* for plaintiff in error.

*Peck* and *Edmiston* for defendants in error.

POLSLEY, J.

This was an action of debt brought on a negotiable note for 2,000 dollars, dated June 18th, 1856, payable one hundred and twenty days after its date, at the office of the Exchange bank of Virginia, at Weston, drawn by Parker B. Cookman and endorsed by the defendants. To which action the defendants pleaded payment and *nil debet.*

At the trial of the cause, after the plaintiff had given the note in evidence, the defendants gave evidence *tending* to prove that in the latter part of September, 1856, the plaintiff agreed with the defendant, Parker B. Cookman, that he might make payment of the said note by a deposit of the amount thereof in the Lancaster bank, in the city of Lancaster, in the State of Pennsylvania, to the credit of the plaintiff; and *proved* that the said defendant did on the 17th day of October, 1856, deposit 3,000 dollars in the said Lancaster bank to the credit of plaintiff. Thereupon the plaintiff gave evidence tending to prove that it was the

established custom between the Exchange bank and its
dealers, and particularly with the defendant, Parker B.
Cookman, that the dealer might deposit funds in any one of
several banks in Pennsylvania or Maryland to the credit of
the plaintiff; and for the plaintiff on receipt of notice of
such deposit to credit the same to the dealer; or, as stated
negatively in the bill of exceptions; that it was the custom
and usage of the plaintiff *not* to give the credit until notice
of such deposit was received, and that the defendant,
Parker B. Cookman, had notice of and had long acquiesced
in that mode of having credit given to him on his indebted-
ness to the plaintiff. The plaintiff also proved, that the
notice of the deposit of the 3,000 dollars was not given
until more than a month after it was made, and that the
Lancaster bank at the time of the deposit, and for a month
after was good and solvent, but that it failed and became
insolvent before the plaintiff received the notice of the
deposit.

After evidence had been given tending to prove the facts
aforesaid, the plaintiff moved the court to instruct the jury,
" That if they believe from the evidence that the defendant,
Parker B. Cookman, commenced dealing with the Exchange
bank, at Weston, by borrowing money therefrom and
executing his notes payable therein in the year 1852, and
continuing so to do to September, 1856, and to make pay-
ments of his indebtedness by deposits of money in the
Lancaster bank and other banks in Pennsylvania, to the
credit of the Exchange bank, at Weston, and that it was the
custom of the Lancaster bank to give prompt notice of such
deposits to the plaintiff, and that the defendant, Parker B.
Cookman, did not receive credits on his indebtedness to said
Exchange bank for such deposits until the Exchange bank
received notice of such deposits, and that it was not the
custom of the Exchange bank, at Weston, to give him
credit for such deposits until notice thereof was received:
and that the Lancaster bank failed and became insolvent on
the 17th day of November, 1856, and has so continued, and
that the plaintiff did not receive notice of the deposit so

made on the 17th day of October, 1856, by said Cookman until the 4th day of December, 1856; that then the said deposit of the 17th of October, 1856, in the said Lancaster bank to the credit of the Exchange bank, at Weston, should not be regarded by the jury as a payment of the debt in the declaration mentioned, or as a set off against the same."

There were three other instructions asked by the plaintiff, but all of them, though differing in form, were in substance and effect the same as the foregoing, all of which the court refused to give, and to which refusal the plaintiff filed four several bills of exceptions; the fourth of which in the words of instruction as above quoted, embrace substantially all the points raised in the others, or any of them.

The attorneys for the plaintiff in error contend, " First, That the established custom of the banks and the previous transactions of the parties for at least four years, and the established custom of dealing between them particularly, the fact that the plaintiff never gave credit to the defendant under similar circumstances with the present, until notice was received that the deposit had been made, and that he acquiesced in that mode of having credit given to him on his indebtedness to the plaintiff, constitutes a substantive part of the agreement in the present case, to the benefits of which the plaintiff is entitled.

" Secondly, That what is claimed as a payment by the defendant was made without authority of the plaintiff, before the maturity of the note."

It may be proper to remark here, in order to exclude a conclusion, that no *similar* circumstance is shown to have ever occurred between the parties.

The debt in controversy was contracted on the 18th day of June, 1856, and it is apparent, on the face of the record, that *two* several agreements were made by the parties as to the *place* of payment. The first one was at the time the debt was credited; of which the note itself is evidence: and by its terms the payment was to be made at the office of the plaintiff, in Weston; or, if the custom constituted a substantive part of the agreement, at either of the several

banks in the State of Pennsylvania, or in Baltimore, at the option of the defendant. The second contract, as to the place of payment, was made in September, about 90 days after the former; by which it was agreed, as set out in the first bill of exceptions, that the defendant might make *payment* of said note by a deposit of the amount thereof in the Lancaster bank, to the credit of the plaintiff. Supposing the custom as proved, to be good, to which of the two contracts does it attach?—to the original, when the debt was negotiated, or to the subsequent one?

In substance the custom was, ·"That the dealer might deposit funds in *any one* of several banks, at his option, to the credit of the plaintiff, and that the plaintiff on receiving notice of such deposit should credit the same to the dealer." This was the general custom between the Exchange bank and its dealers, and particularly with the defendant, Parker B. Cookman, and always attached as soon as the debt was created; and if a good custom, became a substantive part of the contract—as much so as if it had been incorporated in it, or endorsed on the note. With such endorsement on the note, or under such general custom, a deposit in any one of the several banks referred to, of the amount of the note to the credit of the plaintiff, with reasonable notice thereof, would have constituted a good payment. In other words, the custom gave the defendant the right of election as to the depository, but imposed on him the duty of giving reasonable notice thereof to the plaintiff before he was entitled to credit. Without such reciprocity the custom would evidently not be good.

Under the supposed contract, made in September, the defendant had no such election,—the right to pay, at any other place than the office of the plaintiff, was expressly limited to the *particular* bank designated in the agreement. This was inconsistent with, and repugnant to the custom.— If therefore the custom was a substantive part of either agreement, it must have been the original and not the after contract; and being a substantive part of the former, the latter notwithstanding its phraseology, must be presumed to

have been made at the instance, and for the benefit of the plaintiff; because it was manifestly to the prejudice of the defendants,—they could not possibly derive any advantage from it; but on the contrary, by assenting to it they surrendered their previous customary right to deposit in any one of several banks—the Lancaster bank inclusive, and agreed to be limited to the latter.

This view of the question, without controverting the arguments, or the authorities cited by the attorneys for the plaintiff in error, puts the custom out of the case,—if the latter contract is supposed to be proved; and the verdict of the jury is conclusive on that point. The special agreement having superceded the original, and being inconsistent with the custom, must be interpreted like any other contract, by the ordinary and well established rules of law, independent of any usage or custom.

That agreement was, "That the defendant might make payment by a deposit of the amount of the note in the Lancaster bank to the credit of the plaintiff."

And the proof is, that on the 17th of October, before the note was due, the defendant did deposit in said bank the sum of 3,000 dollars to the plaintiff's credit; but that notice was not given to the plaintiff of the deposit until more than a month afterwards, and that said bank was solvent at the time the deposit was made, but had failed before the notice was given.

Was it the duty of the defendant, under the special contract, to give the plaintiff notice of the payment or deposit? this is the only remaining question.

Under the custom it was clearly so; and it was reasonable that such notice should be given: because the defendant had the option of selecting any one of several depositories; but by the special contract a *particular* depository was appointed by the plaintiff: and by authorizing the defendant to make payment in the Lancaster bank, *it* was, if not expressly, certainly by implication, constituted the agent of the plaintiff to receive the money, and was in no respect the agent of the defendant. It was, as if the plaintiff had

COURT OF APPEALS OF WEST VIRGINIA. 77

Jan'y Term,      Exchange Bank vs. Cookman.      1865.

drawn an order or draft on the defendant directing him to pay the amount to the Lancaster bank. The payment of the draft on presentation, would have been a complete satisfaction and discharge of the debt. It is true that the special contract was not in writing, but if proved that does not effect its validity. It was a verbal authority or direction to pay to the Lancaster bank: and payment was made literally according to the direction—to the satisfaction of the agent—which is as conclusive as if it had been made to the creditor in person. Payment "is the fulfilment of a promise; and it must be made to the creditor himself, or his assigns, or to *some person authorized by him to receive it*, either expressly or by implication, and when properly made discharges the debtor from his obligation." Bouvier's Law Dict., vol. 2, page 303.

That the Lancaster bank was authorized by the plaintiff to receive payment, is settled by the decision in the case of *Eyles* vs. *Ellis*, 4 Bing. 112-13—13 Com. Law Reports 365. The case is directly in point, and is conclusive as well of the question of agency as of notice. In that case, as in this, the depository failed after the payment was made. Notice of the payment was duly sent to the creditor, but the court in its decision did not even allude to the notice. The point decided was, " That the *creditor*, by directing the debtor to pay to the Maidstone bankers, made them *his* agents to receive the money and that the payment to them discharged the debt." Payment to an agent is, in law, payment to the principal, and is, of course, notice to him of that fact.— 1 Leading Cases 499–500.

No analogy, or similarity is perceived between this case and that of *Harper* vs. *Patton* in 1 Leigh 306. In that case, in consideration of forbearance, it was agreed that Patton, the creditor, should send Harper's flour to his own commission merchant to be sold, and that the nett proceeds should be applied to Harper's credit. Patton accordingly sent the flour to the merchant with instructions to sell and remit him the proceeds. The merchant sold the flour and received the money, but failed, and without any fault of Patton the

78    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,        Exchange Bank vs. Cookman.          1865.

proceeds were lost. It was held, by a majority of the court, that Harper must bear the loss. The case was decided upon its own circumstances, and settled no principle of law. The eminent reporter himself, was unable to extract any rule or principle from the opinion of the court, but after giving a synopsis of the facts says: "It was held that Harper must bear the loss." It seems to have been the opinion of the court that the flour remained the property of Harper until it was sold—that then the proceeds were to be remitted to Patton, but that he was not bound to give the credit *until* they were received, and that as they were lost without any fault of his, Harper must bear the loss.

This was in conformity with, and resulted from the terms of the agreement. It was not the flour itself, but the nett proceeds thereof, that was to be credited. For selling the flour and remitting the proceeds the merchant was the factor or agent of Harper. Patton had no other control over the flour than to ship it, and to order the proceeds to be remitted to himself. He performed his part of the agreement, but the agent failed, no proceeds were received, and of course no credit to be given.

In the case now before us the debtor himself was to pay into the depository—the agent of the creditor—and this was all that he was required to do by the terms of the contract. It was the *last* act to be performed, and its fulfilment discharged the obligation. To the second objection, it is sufficient to say, that the payment being made to, and *received* by the plaintiff's agents it is immaterial whether it was made at, or before, the maturity of the note. I am therefore of opinion that the instructions were all properly refused, that there is no error in the record, and that the judgment ought to be affirmed.

BROWN, J., dissentient.

This is a supersedeas to the judgment of the circuit court of Lewis county rendered in an action at law, in which the plaintiff there is the plaintiff here.

The errors complained of are the rulings of the court

below, in refusing to give certain instructions, Nos. 1, 2, 3 and 4, asked by the plaintiff. The bills of exceptions do not purport to set out all the evidence in the cause, but only so much and the tendencies thereof as was deemed important to show the materiality of the instructions asked. The 1st instruction propounds substantially this proposition of law,—that a debtor who was bound by his negotiable note *to pay* at the Exchange bank, at Weston, in Virginia, but was authorized by his creditor, after the debt was incurred, and before it became due, to deposit the amount in the State of Pennsylvania, and who did it accordingly, cannot avail himself thereof, either as a payment or set off, unless he also caused notice of said deposit to be given to the creditor in a reasonable time.

This instruction *implies* a payment if notice were given, but denies the payment if notice were not given.

In the case of *Eyles* v. *Ellis*, 4 Bingman 112–13, 13 Eng. Com. Law Reports 365, the creditor had requested the debtor *to pay* to the creditor's banker at Maidstone, which he did accordingly: or what was equivalent; and wrote the next day advising the creditor of the fact; but before the letter was received, the banker failed. Best, C. J., delivering the opinion of the court of common pleas, in that case, said, "The learned sergeant, (*i. e.* Onslow serg't who tried the case at the Kent assizes) was right in esteeming this a payment. The plaintiff had made the Maidstone banker his agent, and had authorized him to receive the money due from the defendant."

The same principle applied to the facts supposed in this first instruction, would equally make the bank of Lancaster the agent of the plaintiff in the premises. For the facts therein supposed are, 1st, the agreement and authority by the plaintiff to the defendant, Parker B. Cookman, to deposit in the bank of Lancaster to the credit of the plaintiff in payment of the debt in question: 2nd, the deposit so made by the defendant, and the receipt thereof accordingly by the Lancaster bank.

A payment by the debtor to the agent of the creditor duly

authorized to receive it, changes the property in the money paid, and cancels the debt *pro-tanto* as effectually as if paid to the principal—unless vitiated by some misfeasance or non-feasance of the debtor.

It is certainly the duty of the agent to give notice promptly, to his principal of payments made to him for the other's use : but that it is likewise the duty of the debtor to do it, is by no means so clear, where the time, place and agent are specified in the agreement authorizing the payment, and that made accordingly. If the time, place and agent, or either of them were indefinite, and only to be made definite by the selection of the debtor, there would be reason for it. In the case of Harper and others *vs.* Patton, 1 Leigh 306, the *intention* of the parties was made to determine the risk and loss in controversy, and the judges deduce that intention from the circumstances of the case, and make the commission merchant, by turns the agent of the creditor and debtor.

That was a judgment of the county court rendered upon all the facts proved in the cause, upon a motion to award execution upon a forfeited forthcoming bond, and those facts all set forth in the record, from which the appellate court might well deduce any intention of the parties which those facts might warrant. But in the case at bar nothing can be considered but the facts supposed in the instructions; and the facts supposed in the first instruction, now under consideration, are not sufficient to enable the court to determine the intention of the parties, as to which should give notice of the contemplated payment. And where the intention of the parties is not manifest, the law must determine their duties and liabilities, respectively.

The plaintiff having appointed the time and place of payment, and an agent to receive it, ought to look to that agent and not to the debtor, who in making the deposit in pursuance of the authority, is guilty of no laches in doing nothing more.

I think therefore that the court below committed no error in refusing to give the 1st instruction. And the same is

equally true of the 2nd and 4th instructions, as asked and refused; unless the facts therein supposed, be deemed sufficient to warrant the conclusion, that it was the *intention* of the parties to change the rule in the particular case, and throw on the debtor the *onus* of giving notice of the payment authorized.

But I have not been able to deduce such conclusion from the facts supposed in either of those instructions. The notices given as supposed were the acts of the plaintiff's agent, and not of the defendant; and the dates of the credits given, the act of the plaintiff and not of the defendant; nor is it in either of them alleged or supposed that the defendant, Parker B. Cookman, knew or recognized the fact, that the credit given him at the plaintiff's bank was contingent upon notice, or postponed to the 'dates of the notices respectively; nor is any custom or habit in the manner of dealing between the parties, therein alleged or supposed. In the absence of which I must conclude that these instructions, *i. e.*, the 2nd and 4th were likewise rightly refused by the court below. The 3rd instruction is in the words following:

"That if the jury believe from the evidence, that it was the usage and custom of the Lancaster bank to receive from the defendant, Parker B. Cookman, to the credit of the Exchange bank of Virginia at Weston, at sundry times, prior to the 17th of October, 1856, deposits to the credit of the plaintiff, and to give due and timely notice thereof to the plaintiff, and that the defendant, Parker B. Cookman, was not in the habit of receiving credit in the Exchange bank at Weston for such deposits until said bank at Weston received notice of such deposits, and that the defendant, Parker B. Cookman acquiesced in that mode of giving credit to him, and that no notice of the deposit of the 17th of October, 1856, was given to plaintiff until the 4th of December, 1856, and that said Lancaster bank failed and became insolvent and unable to pay its debts, on the 17th of November, 1856, and so continued, then the jury should not allow the deposit of the 17th of October, 1856, in said

Lancaster bank as a payment of the debt in the declaration mentioned, or as a set off against the same."

This instruction, unlike the rest, does not pre-suppose an express authority by the plaintiff to the defendant to pay elsewhere than specified in the original note, but is based upon the course of dealing between the parties, and presents two other distinct propositions of law for consideration. The 1st of which is substantially, that a habitual course of dealing amounting to usage and custom between the parties, understood and acquiesced in by the defendant Cookman, must be regarded, in ascertaining the intention of the parties and the legal effect of their action, in a subsequent transaction of the same nature and character. This seems so consonant with common sense, common experience and common law, that little need be said in support of it. By the past we judge the future, by the habits we judge the action, and the accustomed course is the avenue to the secrets of the heart and the key to the thoughts of the mind. To disregard the controlling power of habitual usage and custom in interpreting the ambiguous transactions of men, would be to throw away a most important touchstone of truth.

The 2nd proposition is, that notice being requisite to entitle the defendant to the credit claimed, according to the usage and custom supposed, the notice given as stated in the instruction was not such reasonable notice as due diligence and the law required. And of the correctness of this there can hardly be two opinions.

I am of the opinion therefore, that the circuit court erred in refusing to give the 3rd instruction, and that for that error the judgment ought to be reversed with costs to the plaintiff, the cause remanded to the circuit court of Lewis county with instructions to set aside the verdict and award a new trial on payment of costs of suit, if asked by the plaintiff; and further, to instruct the jury if required, in conformity with the principles herein laid down.

BERKSHIRE, P. I concur in the *result* of the opinion of Judge Polsley, and think that the court below properly

refused to give each and all of the instructions asked for by the plaintiff in error: and that the judgment should be affirmed. I am not able, however, to concur in some of the conclusions he has drawn from the alleged customs and usages, which it was claimed by the plaintiff, existed between it and the other banks referred to, and defendant Cookman, in so far as he deduces therefrom a duty, on the part of said Cookman, to give notice to the plaintiff of the deposits so made by him in those banks, to the credit of the plaintiff. On the contrary, I think the duty of giving such notice, under the custom and usage contended for by the plaintiff, clearly devolved on the banks receiving such deposits, who were the agents of the plaintiff, and not of the depositor Cookman.

JUDGMENT AFFIRMED.